1
2
3
4
5
6
7        **IN THE UNITED STATES DISTRICT COURT FOR THE**

8              **EASTERN DISTRICT OF CALIFORNIA**

9

10   **ROBIN BREWER, individually and on**        **CV F 06-01324 AWI DLB**
     **behalf of all others similarly situated,**

11                                          )
12                                          )   **MEMORANDUM OPINION**
                                            )   **AND ORDER GRANTING IN**
                  **Plaintiff,**            )   **PART AND DENYING IN**
13                                          )   **PART DEFENDANT**
           **v.**                           )   **SALYER'S MOTION TO**
14                                          )   **DISMISS**
     **SCOTT SALYER,**                      )
15                                          )
                  **Defendant.**            )
16   _____    )

17

18        This is a putative class action alleging violations of the Racketeer Influenced and Corrupt

19   Organizations Act ("RICO"), 18 U.S.C. § 1961, *et seq*.  The case is before the Court on

20   Defendant's Motion to Dismiss.

21                        **FACTUAL BACKGROUND**

22        Plaintiff Robin Brewer filed this class action on behalf of all hourly-paid workers legally

23   authorized to be employed in the United States who have been employed by SK Foods LP at its

24   California processing plants ("SK Foods").   Plaintiff Brewer is a former hourly-paid employee

25   of SK Foods. Plaintiff claims that Defendant's alleged employment of undocumented workers

26   has depressed the wages of the putative class.

27        Defendant is Scott Salyer ("Salyer"), President of SK Foods.  SK Foods is a grower and

28   processor of tomato products based in the San Joaquin Valley with thousands of employees.

Plaintiff avers that SK Foods is a limited partnership that affects interstate commerce and is a RICO enterprise, pursuant to 18 U.S.C. § 1961(4). SK Foods is not a party to this lawsuit.

Plaintiff alleges that Defendant has implemented a scheme designed to depress the wages of SK Foods employees by knowingly employing large numbers of undocumented workers (the "scheme"). Plaintiff claims that the scheme saves SK Foods millions of dollars per year in labor costs. According to Plaintiff, Salyer has knowingly employed more than 5,000 undocumented workers in the last four years alone and depressed the market price for unskilled labor. Plaintiff alleges that the scheme is perpetrated every day as an integral part of SK Foods' regular staffing of its plants. Plaintiff claims that Salyer, as President of SK Foods, has personally approved what Plaintiff alleges is unlawful hiring criteria: hiring workers who cannot speak English while claiming to be citizens or permanent residents; hiring workers who are recent arrivals to the U.S. and claim to be citizens or permanent residents; hiring workers who present authorization documents that are invalid on their face because the pictures are of a different person, are upside down, or are of poor quality; hiring workers who SK Foods' hiring staff knows are in the U.S. illegally and are using false documents; and hiring workers who have been previously employed by SK Foods under different identities. Plaintiff further claims that a majority of SK Foods' hourly workforce falls into one or more of these categories. Additionally, Plaintiff alleges that SK Foods is often informed by the Social Security Administration that large numbers of its workers are using false social security numbers and that most of these workers simply assume new identities and continue to work for the company.

Plaintiff claims that Salyer visits the plants on a daily basis and observes the undocumented workforce. Furthermore, according to Plaintiffs, Salyer knows that most of his workforce is ineligible for employment because his employees are not U.S. citizens or permanent residents. Indeed, Plaintiff contends that Salyer "knows that SK Foods is committing a massive immigration law conspiracy in order to maintain this workforce." Complaint ¶ 17.

Plaintiff claims that the conspiracy is facilitated by SK Foods' human resources personnel

2

1  who implement the scheme by "turning a blind eye to the fact that workers who claim to be U.S.

2  citizens or lawful permanent residents cannot speak English and are using false and stolen

3  identity documents."  Complaint ¶ 18.

4                           **PLAINTIFF'S RICO CLAIMS**

5          Plaintiff alleges that Salyer has operated SK Foods in an ongoing pattern of racketeering

6  in violation of 18 U.S.C. § 1962(c) and that the alleged conspiracy to perpetrate the hiring

7  scheme violates 18 U.S.C. § 1962(d).

8  _____According to Plaintiff, Defendant has engaged in racketeering activity through a pattern

9  of violations of Section 274 of the Immigration and Nationality Act, 8 U.S.C. § 1324 ("INA").

10  In particular, Plaintiff alleges that Salyer has violated and continues to violate 8 U.S.C. §

11  1324(a)(3)(A)[1], which makes it a federal crime to "knowingly hire[] for employment at least 10

12  individuals with actual knowledge that the individuals are [undocumented] aliens" during a

13  twelve-month period; and 8 U.S.C. § 1324(a)(1)(A)(iii), which makes it a federal crime to

14  "conceal[], harbor[] or shield from detection, or attempt[] to conceal, harbor or shield from

15  detection" aliens that have illegally entered the United States.  According to Plaintiff, employing

16  undocumented workers constitutes harboring under the statute.

17          Plaintiff alleges that Salyer has conspired with unnamed co-conspirators at SK Foods to

18  perpetrate the hiring scheme by participating in the affairs of SK Foods through the pattern of

19  racketeering activity described above.  According to Plaintiff these unnamed co-conspirators are

20  SK Foods' human resources personnel.  Plaintiff further claims that the hiring scheme is

21  ongoing, open-ended, and has been perpetrated continuously for the last four years.

22          Plaintiff claims that the hiring scheme is a substantial factor in causing the depressed

23  wages about which Plaintiff and the class complain.

24

25

26          [1]Plaintiff's complaint cites to 8 U.S.C. § 1324(a)(1)(B)(3)(A) which, as Defendant points
    out, does not exist.  Based on the statutory language Plaintiff cites in the Complaint, as well as
27  Plaintiff's reply brief, it appears that Plaintiff intended to refer to 8 U.S.C. § 1324(a)(3)(A).

28                                      3

## LEGAL STANDARD ON MOTION TO DISMISS

A complaint may be dismissed under Rule 12(b)(6) of the Federal Rules of Civil Procedure if it appears beyond doubt that the plaintiff can prove no set of facts in support of the claim that would entitle him to relief. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), *citing Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Balistreri v. Pacifica Police Department*, 901 F.2d 696, 699 (9th Cir. 1990). A dismissal under Rule 12(b)(6) can be based on the failure to allege a cognizable legal theory or the failure to allege sufficient facts under a cognziable legal theory. *Robertson v. Dean Witter Reynolds, Inc.,* 749 F.2d 530, 533-34 (9th Cir. 1984). Essentially, a motion to dismiss for failure to state a claim tests plaintiff's compliance with the liberal requirements of Rule 8 of the Federal Rules of Civil Procedure.[2] 5A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 1356, at 294-96. In considering a motion to dismiss, the court must accept as true the material facts alleged in the complaint,

---

[2]Defendant Salyer seems to argue that RICO claims are subject to a heightened pleading standard due, at least in part, to the requirement by certain federal district courts, pursuant to standing orders, that RICO plaintiffs file RICO case statements. These RICO case statements require RICO plaintiffs to state in detail and with specificity the basis for their RICO claim. This Court has no standing orders relating to RICO and does not require a RICO case statement. Defendant requests that the Court take judicial notice of the RICO Standing Orders issued by the district courts of the Central and Southern Districts of California. "A judicially noticed fact must be one not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b). "A court shall take judicial notice if requested by a party and supplied with the necessary information." Fed. R. Evid. 201(d). The Ninth Circuit has cautioned that, in certain circumstances, RICO standing orders may require far more information from plaintiffs than is required under Rule 8 or Rule 9 of the Federal Rules of Civil Procedure. *Wagh v. Metris Direct, Inc.*, 363 F.3d 821 (9th Cir. 2003). In the instant case, since Plaintiff's Complaint does not sound in fraud, the proper standard is the notice pleading requirements of Rule 8. Accordingly, Defendant's request for judicial notice of the the RICO standing orders from the district courts of the Central and Southern Districts of California is hereby granted, but the proper pleading standard for Plaintiff's Complaint is under the Rule 8 of the Federal Rules of Civil Procedure.

Defendant also requested judicial notice of the complaint file with the U.S. District Court, Eastern District of Washington in the matter *Mendoza v. Zirkel Fruit Co.*, case no. CY-00-3024-AAM and the *Mendoza* Plaintiffs' RICO Case Statements filed in that court. Plaintiff Salyer requests judicial notice of a recent decision in the case *Hernandez v. Balakian*, case no. 1:06-CV-01383-OWW-DLB, from the Eastern District of California, denying a motion to dismiss. The Court takes judicial notice of these documents for the fact that they were filed in other cases, but not for the substance of any analysis contained therein.

*Hospital Bldg. Co. v. Rex Hospital Trustees*, 425 U.S. 738, 740 (1976), and liberally construe the complaint in favor of plaintiff. *Jenkins v. McKeithen*, 395 U.S. 411, 421 (1969).

## DISCUSSION

The elements of a civil RICO claim are as follows: "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity (known as 'predicate acts') (5) causing injury to plaintiff's 'business or property.'" *Living Designs, Inc. v. E.I. Dupont de Nemours and Co.*, 431 F.3d 353, 361 (9th Cir. 2005). RICO prohibits engaging in a pattern of "racketeering activity," defined in 18 U.S.C. § 1961(a) as violating certain laws. Included as racketeering activity is "any Act which is indictable under the Immigration and Nationality Act, section 274 (relating to bringing in or harboring certain aliens) . . . ." 18 U.S.C. § 1961(1)(F). A "pattern of racketeering activity" is defined in 18 U.S.C. § 1961(5) as "at least two acts of racketeering activity" within a ten year period.

Defendant contends that Plaintiff's Complaint should be dismissed because Plaintiff does not sufficiently plead the necessary elements of the underlying RICO predicate acts, failed to plead a pattern of racketeering activity, failed to identify a legally sufficient a RICO enterprise, and because Plaintiff's claimed damages are too speculative.

## I. Whether Plaintiff Adequately Pled the Necessary Elements of the Underlying RICO Predicate Acts

Defendant argues that Plaintiff has failed to plead sufficiently violations of 8 U.S.C. § 1324(a)(3) and 8 U.S.C. § 1324(a)(1)(A)(iii), the predicate acts alleged in the Complaint.

### A.   8 U.S.C. § 1324(a)(3)

8 U.S.C. § 1324(a)(3) provides:

> (A) Any person who, during any 12-month period, knowingly hires for employment at least 10 individuals with actual knowledge that the individuals are aliens described in subparagraph (B) shall be fined under Title 18 or imprisoned for not more than five years, or both.

> (B) An alien described in this subparagraph is an alien who -

> (i) is an unauthorized alien (as defined in section 1324a(h)(3) of

1   this title), and

2          (ii) has been brought into the United States in violation of this title.

3   8 U.S.C. § 1324a(h)(3) defines an "unauthorized alien" as "with respect to the employment of an

4   alien at a particular time, that the alien is not at that time either (A) an alien lawfully admitted for

5   permanent residence, or (B) authorized to be so employed by this chapter or by the Attorney

6   General."

7          Defendant argues that the Complaint contains mere conclusory allegations regarding

8   Salyer's alleged violations of § 1324(a)(3).  Defendant's attack on the Complaint is two pronged:

9   1) the conduct alleged at best violates the Immigration Reform and Control Act ("IRCA"), 8

10  U.S.C. § 1324a (which is not a RICO predicate act), and not § 1324(a)(3)(A) (which is a RICO

11  predicate act); and 2) the failure to allege that Salyer himself smuggled the aliens into the country

12  or that he otherwise had knowledge of their smuggling is fatal to the Complaint because it does

13  not satisfy § 1324(a)(3)(B), the statutory definition of "alien" under § 1324(a)(3)(A).

14         The most factually specific part of Plaintiff's Complaint is its allegations regarding the

15  employment hiring criteria Salyer allegedly implemented through SK Foods in furtherance of the

16  scheme.  According to Plaintiff, Salyer "has approved the following hiring criteria, which subvert

17  the law against hiring illegal immigrants and effectively turn a blind eyes [sic] to factors which

18  any reasonable employer would know indicate job applicants are unauthorized for employment in

19  the U.S."  Complaint ¶ 15.  The criteria cited are the following:

20             1) hiring workers who cannot speak English while claiming to be
               U.S. Citizens or Lawful Permanent Residents; 2) hiring workers
21             who are recent arrivals to the U.S. and claim to be U.S. Citizens or
               Lawful Permanent Residents; 3) hiring workers who present
22             authorization documents which are invalid on their face because
               the pictures are of a different person, are upside down, are on poor
23             quality paper, etc.; 4) hiring workers who are personally known to
               SK Foods' hiring staff to be in the U.S. illegally and are using false
24             documents; 5) hiring workers who have previously been employed
               by SK Foods under different identities.
25

26  *Id*.  Plaintiff also alleges that SK Foods is "often informed that large numbers of its workers are

27

28                                                    6

using false social security numbers by the Social Security Administration" and that "these workers then simply assume new identities and continue to work for the Company."  *Id*. at ¶ 16.

Defendant contends that some of the conduct described in the Complaint is not illegal and further argues that imposing these requirements would run afoul of antidiscrimination laws, and that the conduct violates IRCA not INA.  Defendant, however, does not appear to argue that the conduct alleged in ¶ 15 does not go to establishing Salyer's knowledge regarding the hiring of undocumented workers, which is the matter before the Court.

As to hiring criteria one, Salyer argues that imposing an English-speaking requirement on applicants for employment in order to validate their work authorization status, violates the National Origin Anti-Discrimination provisions of the federal civil rights law.  *See* Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*.; 29 C.F.R. § 1606.  As Plaintiff notes, however, the Ninth Circuit has held that the inability to speak English is a factor that may be considered in determining a defendant's knowledge that a person is in the United States illegally.  *See U.S. v. Holley*, 493 F.2d 581, 582-583 (9th Cir. 1974) (lack of English language skills one of six factors considered).  Salyer also argues that using an applicant's inability to speak English as a basis for according them different treatment would violate the unfair immigration employment practices provisions of 8 U.S.C. § 1324b.  *Robison Fruit Ranch, Inc. v. U.S.*, 147 F.3d 798, 799 (9th Cir. 1998), found that the general anti-discrimination provisions of § 1324b "prohibit[] discrimination on the basis of national origin or citizenship status, except, of course, against an alien who is not authorized to work."  Thus, although lack of English-language skills alone is not a proxy for undocumented status (as the Ninth Circuit has noted, this describes thousands of American citizens, *U.S. v. Camacho-Davalos*, 468 F.2d 1382, 1383 (9th Cir. 1972)), it may be considered as a relevant factor.

 Defendant argues that hiring criteria two, regarding "hiring workers who do not have housing indicates that they are [undocumented] is facially nonsensical."  Hiring criteria two actually involves "hiring workers who are recent arrivals to the U.S. and claim to be U.S.

1  Citizens or Lawful Permanent Residents." *See* Complaint ¶ 15. The Court will not address this

2  criteria since it was not briefed by either of the parties.

3          Defendant also argues that hiring criteria three, four, and five (hiring workers with

4  facially invalid authorization documents, hiring workers known to be undocumented, hiring

5  previous employees under different identities, respectively), state violations under IRCA and not

6  INA. IRCA prohibits knowingly employing unauthorized aliens, however, a violation of IRCA

7  does not constitute a RICO predicate act. This Court notes that other courts have rejected this

8  argument and found that the same conduct may constitute violations of either IRCA or INA. "As

9  a general matter, the fact that Congress has enacted two sections encompassing similar conduct

10 but prescribing different penalties does not compel a conclusion that one statute was meant to

11 limit, repeal, or affect enforcement of the other. Statutes may 'overlap' or enjoy a 'partial

12 redundancy,' . . . and yet be 'fully capable of coexisting.'" *U.S. v. Kim*, 193 F.3d 567, 573 (2d

13 Cir. 1999) (rejecting criminal defendant's argument that as an employer he could only be

14 prosecuted under § 1324a rather than § 1324), *quoting United States v. Batchelder*, 442 U.S. 114,

15 118-22 (1979); *U.S. v. Zheng*, 306 F.3d 1080, 1085 (11th Cir. 2002) (same); *Hernandez*, --- F.

16 Supp. 2d ---, 2007 WL 926813 (E.D. Cal. 2007) (Case No. CV-F-06-1383 OWW/DLB). Thus,

17 the fact that the conduct alleged in ¶ 15 violates IRCA does not preclude that same conduct from

18 also violating INA.

19         As to the allegations in ¶ 16 that SK Foods was informed by the Social Security

20 Administration that its workers were using false social security numbers and that these workers

21 assumed new identities and continued to work for SK Foods, the Court finds that these

22 allegations are pled with sufficient factual specificity to survive a motion to dismiss.

23         The parties devote much of their briefs to arguing whether the conduct alleged in ¶¶ 15-

24 16 sufficiently shows Salyer's "actual knowledge" regarding the undocumented status of his

25 workers. The Court notes that under a 12(b)(6) analysis, the importance of the hiring criteria

26 Plaintiff alleges is whether it puts Salyer on notice as to the claim against him and whether the

27

28                                              8

facts pled sufficiently allege Salyer's "actual knowledge" of the undocumented status of the workers.  In particular, the parties dispute whether Plaintiff will be able to rely on circumstantial evidence to prove Salyer had "actual knowledge."  "Defendants' argument[s] go[] to the adequacy and extent of proof of knowledge, not the adequacy of pleading.  Whether or not Plaintiff will be able to produce evidence to satisfy the actual knowledge requirement for the predicate act is an issue for summary judgment or trial."  *Hernandez,*--- F. Supp. 2d ---, 2007 WL 926813.  As to pleading actual knowledge, this Court is in agreement with the *Hernandez* court: "No more is required to meet Defendants' objection [that the complaint fails to allege actual knowledge that the individuals hired are undocumented aliens] than to insert the word 'actual' or 'actually' before the words 'knowledge' or 'knowing' in the Complaint."  *Id.*  Since the Court must accept as true the factual allegations contained in the Complaint, the Court finds that Plaintiff has sufficiently alleged Salyer's actual knowledge of the undocumented status of his workers.

Defendant also argues that Plaintiff's failure to allege that Salyer *himself* brought ten undocumented aliens into the United States with actual knowledge that they were unlawful aliens, as well as Plaintiff's failure to plead sufficient facts regarding how the unlawful aliens were brought into the United States or how Salyer obtained actual knowledge of such circumstances is fatal to the Complaint.  Defendant relies on *System Managment, Inc. v. Loiselle*, 91 F. Supp. 2d 401 (D. Mass. 2000), *rev'd on other grounds*, 202 F.3d 100 (1st Cir. 2002).  *Loiselle* involved allegations similar to those in the instant case against the owner and chief executive office of a janitorial and custodial service company.  There plaintiffs' complaint alleged the repeated and knowing hiring of at least ten unauthorized aliens per year, but the court dismissed claims relating to § 1324(a)(3) because plaintiffs failed to allege how the aliens entered the country or whether defendant had any knowledge of the purpose for which they entered.  *See Loiselle*, 91 F. Supp. 2d at 408.

> The statute also requires the defendant, however, to have actual
> knowledge that the aliens have "been brought into the country in

1   
2   violation of [§ 1324(a)(3) ]." 8 U.S.C. § 1324(a)(3)(B)(ii). This
clause is self-referential and thus difficult to interpret, but in this
case it seems to require, in order for liability to attach, that the
aliens have been brought into the country by an employer for the
purpose of illegal employment. Thus, to state a civil RICO claim
on the basis of a violation of this subsection of Title 8, the
Plaintiffs must allege that Loiselle had knowledge of how the
aliens had been brought into the United States and that they were
brought into the United States in violation of this employment
provision. Although the Plaintiffs have alleged that Loiselle had
knowledge of the aliens' illegal status, they have not set forth any
factual allegation as to *how the aliens entered the country or
whether Loiselle had any knowledge of the purpose for which they
entered*. The text of 8 U.S.C. § 1324(a)(3) therefore compels the
conclusion that the RICO claim brought on the ground of
employment of aliens must be dismissed.

*Id*. (emphasis added.)

The *Loiselle* court further reasoned that § 1324(a)(3) is part of Section 274 of the INA, which is

entitled (and intended to reach) "Bringing in and harboring certain aliens" and that Section 274

should be distinguished from Section 274a of the INA, which is entitled (and governs) "Unlawful

employment of aliens," and which is not a RICO predicate act. *Id*. at 408-09.

Defendant argues that § 1324(a)(3) requires that Plaintiff allege that Salyer himself

brought the aliens into the United States in violation of the statute. The text of §

1324(a)(3)(B)(ii) merely requires that the undocumented alien "has been brought into the United

States in violation of this subsection," but does not require that the employer charged with

violating the subsection be the one to have brought the aliens into the country. Furthermore,

defendant's argument has been rejected by a number of courts. For example, in *Williams v.*

*Mohawk Industries, Inc.*, 314 F. Supp. 2d 1333, 1345-46 (N.D. Ga. 2004), *aff'd in relevant part*,

411 F.3d 1252 (11th Cir. 2005), the defendant, relying on *Loiselle*, argued that the complaint must

allege that defendant itself brought the aliens into the United States. The *Williams* court rejected

this argument, finding that:

> *Loiselle* holds that simple allegations that the defendant knowingly
> hired undocumented aliens are insufficient to state a claim under §
> 1324(a)(3); rather a plaintiff must additionally allege that the
> defendant knew that the aliens were brought into the United States
> for the purpose of illegal employment. *Loiselle*, however, did not

10

hold that the employer *itself* must have brought the aliens into the United States for a claim to arise under § 1324(a)(3).  Accordingly, the court concludes that for a plaintiff to plead a violation of § 1324(a)(3) adequately, the plaintiff must simply allege that the aliens were *brought* into the United States in violation of subsection (a), but there is no requirement that the employer must have brought the aliens into this country.

*Williams*, 314 F. Supp. 2d at 1345-46 (emphasis original); *accord Hernandez*, --- F. Supp. 2d ---, 2007 WL 926813.  The Court agrees with the analysis in *Williams*.  Although *Loiselle* contains broad language to the effect that "for liability to attach . . . the aliens [must] have been brought into the country by an employer for the purpose of illegal employment," that court ultimately held that "to state a civil RICO claim on the basis of a violation of this subsection of Title 8, the Plaintiffs must allege that Loiselle had knowledge of how the aliens had been brought into the United States and that they were brought into the United States in violation of this employment provision," *Loiselle,* 91 F. Supp. 2d at 408, and did not require that plaintiff allege that defendant-employer Loiselle *himself* brought the aliens into the country.  Plaintiff has met its pleading burden by alleging that Salyer had knowledge that the aliens were undocumented and that they were smuggled into the country.

Defendant also uses *Loiselle* to support his argument that to plead a § 1324(a)(3) violation Plaintiff's Complaint must state facts indicating that the aliens allegedly employed by the Defendant were "brought" into the United States.  Defendant further argues that Plaintiff must allege that Salyer had "actual knowledge" that the aliens were brought into the United States in violation of this employment provision.[3]  Plaintiff contends that, to the extent such requirement exists, it has satisfied it with the allegation in the Complaint at ¶ 20 that Salyer knew "each [alien] was smuggled into the country and/or harbored once they arrived here."  The Ninth Circuit has specifically reserved whether or not knowledge of smuggling is required under 8

---

[3]Defendant also argues that Plaintiff's allegations deal with SK Foods hiring conduct, a non-party to this action, but fail to plead any facts as to Salyer's alleged violations of § 1324(a)(3).  Plaintiff's Complaint, however, alleges that Salyer, as President and CEO of SK Foods, has approved and implemented the hiring scheme through SK Foods' human resources personnel.

U.S.C. § 1324(a), *see Mendoza v. Zirkle Fruit Co.*, 301 F.3d 1163 (9th Cir. 2002), but at least one

other circuit court found that a complaint was deficient when it failed to allege "an essential

element of § 1324(a)–that [defendant] had actual knowledge that the illegal aliens it hired were

brought into the country in violation of the statute." *Commercial Cleaning Services, v. Colin*

*Service Systems, Inc.*, 271 F.3d 374, 387 (2d Cir. 2001).

The text of § 1324(a)(3) requires that the defendant have actual knowledge that the

employee is an alien as that term has been defined in subparagraph (B), which means that the

defendant must have knowledge of not only the alien's unauthorized presence but also that the

alien "has been brought into the United States in violation of this subsection." *Zavala v.*

*Wal-Mart Stores, Inc.,* 393 F. Supp. 2d 295, 309 (D.N.J. 2005).  Plaintiff's allegations lack

factual detail, but they are just enough to survive at the motion to dismiss stage.  *See*, *e.g.*,

*Hernandez*, --- F. Supp. 2d ---, 2007 WL 926813 (denying motion to dismiss similar allegations

based on dicta in *Mendoza* and the liberal requirements of notice pleading).  This Court finds that

Plaintiff met its pleading burden as to Salyer's knowledge that the aliens were "smuggled" into

the country, satisfying § 1324(a)(3)(B)(ii).

Defendant's motion to dismiss based on Plaintiffs failure to allege the predicate violation

of 8 U.S.C. § 1324(a)(3) is hereby DENIED.

**B.    8 U.S.C. § 1324(a)(1)(A)(iii)**

Defendant also argues that the Complaint fails to plead any "harboring" activities and

also argues that employment does not constitute harboring.

8 U.S.C. § 1324(a)(1)(A)(iii) subjects to criminal liability a person who:

> knowing[ly] or in reckless disregard of the facts that an alien has
> come to, entered, or remains in the United States in violation of
> law, conceals, harbors, or shields from detection, or attempts to
> conceal, harbor, or shield from detection, such alien in any place,
> including any building or any means of transportation.

Plaintiff alleges that "[e]mploying illegal immigrants constitutes 'harboring'" and further avers

that Salyer violated § 1324(a)(1)(A)(iii), the "harboring provision," by "knowingly employing

large numbers of illegal immigrants."

Defendant relies on *Zavala*, where the district court dismissed plaintiffs' RICO claims on the ground that they had failed to allege facts sufficient to sustain the predicate acts of harboring undocumented aliens under § 1324(a)(1)(A)(iii):

> Where, as here, the statute does not define certain of its terms, courts rely on the ordinary definitions of those terms. . . . Thus, to "harbor" is to "give shelter or refuge to" or "to be the home or habitat of"; to "conceal" is "to prevent disclosure or recognition of" or "to place out of sight"; and to "shield" is to "protect with or as if with a shield" or "provide with a protective cover or shelter" or "to cut off from observation" or "hide." *See* Merriam-Webster On-Line Dictionary. . . . None of the allegations [in the complaint] sufficiently allege these acts.
>
> It is difficult to determine which allegations address concealment or shielding.  The relevant allegations concerning harboring, however, relate to the facts surrounding the conviction of a former Wal-Mart contractor . . . and to Plaintiff Kunc, who was "lodged" and then "put to work" by another Wal-Mart contractor. . . .
>
> These allegations are insufficient. For example, providing housing and employment may constitute "harboring" for "financial gain," but this is not what has been alleged against Wal-Mart. *Zheng*, 306 F.3d at 1083 (involving undocumented aliens who lived in the defendant's house, without paying rent, and worked at the defendant's restaurant six days a week, twelve hours a day). Harboring also might be alleged where, in addition to employing undocumented aliens, a store owner, for example, also provides a back room of the store as a residence. *See United States v. Singh*, 261 F.3d 530, 533 (5th Cir. 2001). *Here, however, Plaintiffs allege that Wal-Mart hired, and continued to employ, Kunc, despite its knowledge that Kunc was not authorized to work in the United States, not that Wal-Mart harbored illegal aliens.* A contractor's "lodging" of an undocumented worker and "putting him to work" falls short of alleging that Wal-Mart sheltered undocumented aliens for the purposes of concealing them and avoiding their detection by immigration authorities. While this Court might infer from the allegations in the complaint that Wal-Mart recklessly disregarded the illegal status of Plaintiffs when it employed them as janitorial or maintenance workers at their various retail locations, it is unclear what alleged conduct by Wal-Mart might constitute the concealing, harboring or shielding of illegal aliens from detection.
>
> Setting aside the insufficiency of the allegations concerning whether Wal-Mart was involved directly in harboring Kunc, or other plaintiffs in this action, it also is unclear how Wal-Mart aided and abetted acts of harboring. At most, Plaintiffs have alleged that Wal-Mart "continued" its association with its maintenance

> contractors and its employment of undocumented workers as
> janitors in its stores. . . .  In sum, these allegations are insufficient
> to state a claim of harboring, conspiracy to harbor, or aiding and
> abetting harboring.

*Zavala*, 393 F. Supp. 2d at 306-307. (emphasis added).  Thus, under the *Zavala* court's analysis, *employment* is distinct from *harboring* and allegations in a complaint that a defendant employs undocumented aliens are insufficient to also allege harboring of undocumented aliens under § 1324(a)(1)(A)(iii).  *Id*.  Employment *and* harboring might lead to a harboring violation, but employment alone does not equal a harboring violation.  *See id.*

Plaintiff cites *U.S. v. Aguilar*, 883 F.2d 662, 689 (9th Cir. 1989) for the proposition that "'harboring' is any 'conduct tending to directly or substantially facilitate the alien's remaining in the U.S. in violation of law.'"  Plaintiff contends that *Aguilar*'s definition of "harboring" is broad enough to encompass employment.[4]  At issue in *Aguilar* was whether it was proper for the district court to strip the intent to evade detection by the Immigration and Naturalization Service from a jury instruction on acts constituting "harboring."  The language cited by Plaintiff is taken from the jury instruction at issue in *Aguilar*.  *See id.*  The court, however, ultimately did not decide the issue presented before it because it was "clear beyond any doubt" that defendants intended to help the aliens in question avoid detection.  *Id*.  The *Aguilar* court, however, cited *U.S. v. Acosta de Evans*, 531 F.2d 428 (9th Cir. 1976), *cert. denied*, 429 U.S. 836 (1986), as authority for concluding that the word "harbor" means "to afford shelter to" and does not require an intent to avoid detection.[5]  *Aguilar*, 883 F.2d at 690.  Contrary to Plaintiff's arguments,

---

[4]Plaintiff cites a legal encyclopedia and a number of cases from other circuits for the proposition that after the 1986 reforms to the immigration laws in IRCA the definition of harboring is broad enough to encompass employment.  These cases, however, merely state that after the immigration reforms, employers were no longer exempt from the proscriptions against harboring undocumented aliens, not that employing undocumented aliens is tantamount to harboring undocumented aliens.  *See, e.g., U.S. v. Kim*, 193 F.3d 567 (2d Cir. 1999).

[5]The *Aguilar* court noted that even if *Acosta de Evans* were incorrectly decided, a panel not sitting *en banc* had no authority to overturn Ninth Circuit precedent.  *Id*. at 60.

*Aguilar* does not stand for the proposition that employment constitutes harboring,[6] but rather articulates the Ninth Circuit's (still binding) definition of "harbor" as "to afford shelter to."

A similar, recent case from this district court is not contrary.  In *Hernandez*, --- F. Supp. 2d ---, 2007 WL 926813, the district court denied defendants' motion to dismiss plaintiff's RICO claims for failure to properly allege a violation of § 1324(a)(1)(A)(iii).  The *Hernandez* court distinguished *Zavala* based on plaintiffs' allegations that defendants directed their hiring personnel to obtain housing for undocumented aliens, thus satisfying the "harboring" requirement.  *Id.*  Plaintiff Brewer in the instant case makes no similar allegations against Salyer relating to housing the undocumented aliens he allegedly employs, nor that Salyer caused SK Foods to procure housing for such aliens.

Thus, the Complaint fails to allege how Salyer "conceals, harbors, or shields from detection" the undocumented aliens he allegedly employs.  Plaintiff fails to allege how Salyer "harbors" undocumented workers in violation of § 1324(a)(1)(A)(iii).  Nowhere does Plaintiff allege that Salyer housed or "afford[ed] shelter to" the undocumented aliens he allegedly hired, assisted the aliens avoid detection, concealed, or shielded them merely by employing them.  Plaintiff's attempt to leverage Salyer's alleged employment of undocumented aliens into a harboring violation is unavailing.  Accordingly, Defendant's motion to dismiss based on Plaintiff's failure to allege the predicate violation of 8 U.S.C. § 1324(a)(1)(A)(iii) is hereby

---

[6]Case law from other circuits indicates that a pattern of behavior including employment may constitute harboring.  *See, e.g., Zavala*, 393 F. Supp. 2d at 306; *U.S. v. Kim*, 193 F.3d at 574-75 (evidence that employer had, or recklessly disregarded, knowledge of employee's status as an undocumented worker and employer's steps designed to help employee remain in its employ undetected by the INS is sufficient to find a harboring violation under § 1324); *U.S. v. Zheng*, 306 F.3d 1080, 1086 (11th Cir. 2002) (affirming conviction where government showed that defendants harbored the illegal aliens by providing both housing and employment which facilitated the aliens' ability to remain in the United States illegally); *United States v. Singh*, 261 F.3d 530 (5th Cir. 2001) (affirming a conviction for harboring illegal aliens for commercial gain where defendants employed illegal aliens in a convenience store and the aliens lived in the back of the store).

GRANTED, with leave to amend.  Plaintiff's amended complaint should include allegations, pleaded with the sufficient factual support necessary, regarding how Defendant concealed, harbored, or shielded from detection (or attempted to conceal, harbor, or shield) aliens in violation of § 1324(a)(1)(A)(iii).

**II.     Whether Plaintiff Pled A Pattern of Racketeering Activity**

Defendant argues that Plaintiff fails to plead a pattern of racketeering activity.  A "pattern of racketeering activity" is defined as at least two predicate acts, within ten years of each other. 18 U.S.C. § 1961(5).  To constitute a "pattern," the defendant's conduct must be both related and continuous.  *H.J., Inc. v. Northwestern Bell Tel. Co.,*, 492 U.S. 229, 239 (1989).  "Continuity is both a closed- and open-ended concept, referring either to a closed period of repeated conduct, or to past conduct that by its nature projects into the future with a threat of repetition."  *Id*. at 241. Open-ended continuity refers to the threat that a defendant will continue to engage in criminal activity in the future.  *Id*. at 242.  A plaintiff can establish open-ended continuity by demonstrating that the defendant's predicate acts either "include a specific threat of repetition extending indefinitely into the future" or constitute the enterprise's "regular way of doing business."  *Id*.  Drawing all inferences in favor of Plaintiff, as the Court must at the motion to dismiss stage, the Court finds that Plaintiff has sufficiently pled a pattern of racketeering activity by alleging Salyer's repeated violations of 8 U.S.C. § 1324(a)(3) "in each of the last four years," Complaint ¶ 20, as well as the "ongoing, open-ended" scheme that "will not stop without judicial intervention."  ¶ 24.  Salyer's alleged repeated hiring of undocumented aliens with knowledge that the aliens were undocumented and smuggled into the United States constitutes a pattern of racketeering activity that furthers the scheme Plaintiff alleges in the Complaint.[7]  Defendant's

---

[7] A dismissed predicate act cannot be considered to establish a pattern of racketeering activity, though upon repleading it may be considered.  *See LaRoe v. Elms Securities Corp.*, 700 F. Supp. 688 (S.D.N.Y. 1988) (where federal securities law claim had been dismissed, it could not be considered a predicate act for purposes of RICO allegations).  Since the Court dismissed, with leave to amend, the harboring allegations in the Complaint, it will not consider those allegations to determine whether a pattern of racketeering activity has been alleged.

1   motion to dismiss based on failure to plead a pattern of racketeering activity is hereby DENIED.

2   **III.    Whether Plaintiff Pled a RICO Enterprise**

3          Defendant also argues that Plaintiff fails to plead a RICO enterprise because the

4   Complaint identifies SK Foods as both the violator of the predicate acts *and* the purported RICO

5   enterprise.  For the purposes of section 1962(c), RICO plaintiffs must allege a defendant–a

6   "person" or "persons"–who  is distinct from the "enterprise" whose business the defendant is

7   conducting.  *Sever v. Alaska Pulp Corp.,* 978 F.2d 1529, 1533-1534 (9th Cir. 1992).  Under

8   RICO, an "enterprise" is "'a being different from, not the same as or part of, the person whose

9   behavior the act was designed to prohibit.'"  *Id.*  Defendant's argument that "[b]ecause Plaintiff

10  has alleged that SK Foods committed the acts that allegedly violated Section 1324, SK Foods

11  cannot also constitute an 'enterprise' for purposes of RICO" is unavailing.  The Complaint

12  distinguishes between Salyer (the named defendant) and SK Foods (the alleged enterprise) and,

13  furthermore, alleges that Salyer has approved and implemented the allegedly unlawful hiring

14  criteria.  The fact that Salyer acted through SK Foods to advance the alleged scheme does not

15  make SK Foods the defendant.  Thus, Plaintiff has satisfactorily alleged a RICO enterprise and

16  Defendant's motion to dismiss on this ground is DENIED.

17  **IV.    Whether Plaintiff Has Alleged A RICO Conspiracy**

18         Defendant argues that Plaintiff's Complaint mentions the word "conspiracy" but does not

19  set forth the minimal factual averments necessary to sustain such a claim.  Defendant contends

20  that the Complaint does not identify any co-conspirators and that Salyer cannot conspire with

21  himself.

22         To establish a violation of section 1962(d), RICO's prohibition against conspiracies,

23  plaintiffs "must allege either an agreement that is a substantive violation of RICO or that the

24  defendants agreed to commit, or participated in, a violation of two predicate offenses.  *Howard v.*

25  *AOL*, 208 F.3d 741, 751 (9th Cir. 2000), *citing Baumer v. Pachl*, 8 F.3d 1341, 1346 (9th Cir.

26  1993).  Additionally, "conspiracy to violate RICO requires a showing that defendant 'was aware

27

28                                        17

of the essential nature and scope of the enterprise and intended to participate in it." *Baumer*, 8

F.3d at 1346, *citing U.S. v. Muskovsky*, 863 F.2d 1319, 1324 (7th Cir. 1988).

Plaintiff's conspiracy allegations are scattered through the Complaint. *See* Complaint ¶ 4

("Defendant Scott Salyer is a citizen of California.  He has conspired to operate SK Foods

through a pattern of racketeering activity, the Illegal Immigrant hiring [sic] Scheme"); ¶ 17

("Scott Salyer is President and Chief Executive Officer of SK Foods.  As Chief Executive

Officer, he personally has approved the hiring policies identified above.  Additionally, he visits

the plants on a daily basis and observes the largely illiterate, Spanish-speaking, illegal workforce.

He knows most of these people are not U.S. citizens or lawful permanent residents, i.e., are

ineligible for employment.  He knows that SK Foods is committing a massive immigration law

conspiracy in order to maintain this workforce."); ¶ 18 ("Many others are part of the conspiracy

to facilitate the Scheme.  Salyer has directed SK Foods' human resources personnel to implement

the Scheme by turning a blind eye to the fact that workers who claim to be U.S. citizens or lawful

permanent residents cannot speak English and are using false and stolen identity documents."); ¶

20 ("Salyer has violated this provision of the Act by conspiring to employ more than 10

undocumented, illegal aliens in each of the last four years, knowing each was smuggled into the

country and/or harbored once they arrived here."); ¶ 24 ("The conspiracy to perpetrate the

Scheme is a violation of 18 U.S.C. § 1962(d), an agreement among Salyer and his unnamed co-

conspirators at SK Foods to violate § 1962(c), by participating in the affairs of SK Foods, LP, the

enterprise, through a pattern of racketeering activity.  The Scheme is ongoing, open-ended, and

has been perpetrated almost continuously for the last four years.")  Although the Complaint does

not identify by name the "SK Foods' human resources personnel" that allegedly implement the

hiring scheme, the Complaint has sufficiently alleged a conspiracy and Defendant Salyer is on

notice as to the identity of his alleged co-conspirators.  As one court in this district has held,

"[w]hen a conspiracy is alleged under section 1962(d), the complaint need not delineate with

precision the roles of the various defendants, but it must inform each defendant of what he did to

join the conspiracy." *Rhoades v. Powell*, 644 F. Supp. 645, 671 (E.D. Cal. 1986).  The illegal

agreement need not be express as long as its existence can be inferred from the words, actions, or

interdependence of activities and persons involved.  *Oki Semiconductor Co. v. Wells Fargo Bank*,

298 F.3d 768, 775 (9th Cir. 2002).  Salyer is on notice regarding what role he is alleged to have in

the conspiracy.  The Complaint alleges Salyer's agreement to engage in the conspiracy and that

the agreement is to violate the INA, a RICO predicate offense, on an on-going basis.  Plaintiff

alleges that Salyer was aware of the scope of the unlawful enterprise and that he intended to

participate–in fact, the Complaint alleges that he approved and implemented the scheme through

SK Foods.

Defendant argues that Salyer is unable to conspire with himself.  The Complaint clearly

states that Salyer conspired with hiring personnel at SK Foods.  To the extent Defendant is

arguing that Salyer, as an officer or director of SK Foods, cannot conspire with personnel at SK

Foods, in this circuit the intracorporate conspiracy doctrine does not apply to claims under

Section 1962(d).  *Webster v. Omnitrition Intern. Inc.*, 79 F.3d 776 (9th Cir. 1996).  Salyer can

conspire with the officers and employees at SK Foods.  Thus, Brewer has sufficiently pled a

RICO conspiracy.  Defendant's motion to dismiss based on Plaintiff's failure to plead conspiracy

is hereby DENIED.

**IV.   Whether Plaintiff's Damages Are Speculative**

It is well-established that RICO plaintiffs must prove proximate causation in order to

recover.  *Anza v. Ideal Steel Supply Corp.*, --- U.S. ----, 126 S.Ct. 1991 (2006); *Holmes v. Sec.*

*Investor Prot. Corp.*, 503 U.S. 258 (1992); *cf. Mendoza*, 301 F.3d 1163.  *Anza* makes clear that

courts should scrutinize proximate causation at the pleading stage and carefully evaluate whether

the injury pled was proximately caused by the claimed RICO violations. *See Anza*, 126 S.Ct. at

1997-98 ("[w]hen a court evaluates a RICO claim for proximate causation, the central question it

must ask is whether the alleged violation led directly to the plaintiff's injuries").  Although *Anza*

does not require plaintiffs to show that the injurious conduct is the sole cause of the injury

asserted, *Anza* does emphasize that in RICO cases there must be "*some* direct relation" between the injury alleged and the injurious conduct in order to show proximate cause. *Id*. (emphasis added).

Defendant argues that Plaintiff fails to plead any facts that support the inference of a causal nexus between the allegedly depressed salary that Plaintiff earned at SK Foods (the injury) and the wages paid to undocumented workers employed by SK Foods (the conduct leading to injury). According to Defendant, it does not inexorably follow that the hiring of undocumented workers reduced the wages of the Plaintiff or class and that there is a host of intervening factors, such as: the wages paid by other growers and processors in the area; the skills and qualifications of plaintiff, individually and in comparison to those of the allegedly undocumented workers; the profitability of SK Foods' business without hiring allegedly undocumented workers; and the general availability of documented workers in the area. Plaintiff responds that its allegations that the hiring of large numbers of undocumented workers has depressed the wages of plaintiff and the class are sufficient.

Both parties cite *Mendoza*, a pre-*Anza* case, in support of their respective arguments. At issue in *Mendoza* was whether legally documented farmworkers had standing under RICO to sue their employers, whom they allege depressed their wages by conspiring to hire undocumented workers at below market wages. *Mendoza*, 301 F.3d at 1166. In *Mendoza*, the district court dismissed plaintiffs' claim on the grounds that the injury claimed–depressed wages by documented employees–was too speculative. The district court relied on the same intervening factors listed by Salyer. The Ninth Circuit reversed and questioned the reasoning of the district court:

> [T]he district court dismissed the complaint based on the conclusion that factors other than the scheme coupled with the growers' power in the relevant labor market *could* account for the plaintiffs' depressed wages. The difficulty with this reasoning is that the employees allege that the growers singularly have the ability to define wages in this labor market, akin to monopsony or oligopsony power . . . . They further allege that it is the illegal scheme that has caused their injury. The proposed amended

> complaint lays to rest any remaining doubt about attributing the alleged harm to the scheme, by spelling out a broad conspiracy causing direct harm to the workers . . . The district court's analysis focused primarily on cause-in-fact not proximate cause, and it is inappropriate at this stage to substitute speculation for the complaint's allegations of causation . . . For now, it is sufficient that the employees have alleged market power–they must not be put to the test to prove this allegation at the pleading stage.

*Id.* at 1171.

Defendant contends that *Mendoza* requires an allegation that he has market power to define wages in the relevant labor market.  Plaintiff retorts that *Mendoza* has no such requirement and that its Complaint has sufficiently pled a direct injury to employees.  The question for this Court is whether the *Mendoza* plaintiffs' depressed wages allegations would have survived a motion to dismiss had their complaint not alleged defendant's market power to set wages. This Court's reading of *Mendoza* indicates that they would have.

The Ninth Circuit panel noted that "it is important to distinguish between uncertainty in the fact of damage and in the amount of damage."  *Id*.  Plaintiff Brewer in the case at bar has alleged that the scheme depressed his wages and the wages of the putative class.  The *Mendoza* court found an allegation such as this sufficient at the motion to dismiss stage.  "That wages would be lower if, as alleged, the growers relied on a workforce consisting largely of undocumented workers, is a claim at least plausible enough to survive a motion to dismiss, whatever difficulty might arise in establishing how much lower the wages would be." *Mendoza*, 301 F.3d at 1171.  There are many factors that affect the wages Brewer and his purported class earn, and Plaintiff need not allege all of them.  It is sufficient at the motion to dismiss stage that he has alleged that the scheme depressed their wages.  Whether Plaintiff can prove these allegations is a subject for discovery and a motion for summary judgment.  A number of other circuit courts have held similarly.  *See Williams v. Mohawk Industries, Inc.*, 435 F.3d 1277, 1288-89 (11th Cir. 2006) (plaintiff's allegations that defendant's widespread scheme of knowingly hiring and harboring undocumented workers has the purpose and direct result of depressing wages paid to employee plaintiffs sufficient at Rule 12(b)(6) stage of litigation);

*Trollinger v. Tyson Foods, Inc.*, 370 F.3d 602, 619 (6th Cir. 2004) (proximate cause analysis regarding effect of hiring undocumented workers on legally documented workers is "fact-driven question[]" more appropriate for resolution at summary judgment stage than on a motion to dismiss); *but see Baker v. IBP, Inc.*, 357 F.3d 685 (7th Cir. 2004) (questioning the Ninth Circuit's reasoning in *Mendoza* and stating that plaintiff's claims that defendant pays lower wages than other competitors would be "very hard to attribute to particular violations of 8 U.S.C. § 1324(a)(3)(A)").

Defendant relies heavily on *Zavala v. Wal-Mart Stores, Inc.* in support of its argument that Plaintiff's damages allegations are too speculative. *Zavala* is distinguishable because, as the *Zavala* court itself noted, that case did not involve allegations "that the *hiring* of illegal immigrants proximately caused injury by depressing wages. The distinction is significant . . . A causal inference that links hiring of illegal immigrants to wage levels might be reasonable and direct, but Plaintiffs cannot rely here on any such inference because they have not alleged hiring as a predicate violation." *Zavala*, 447 F. Supp. 2d at 388. Unlike the plaintiffs in *Zavala*, Brewer has alleged that the hiring of undocumented workers proximately caused injury by depressing wages. According to Salyer, the *Zavala* court also noted that broader economic questions regarding the labor market, supply and demand, and language competency would factor in the analysis, contributing to the speculativeness of plaintiffs' damages theory. As discussed above, that these concerns render a damages allegation speculative was specifically rejected in *Mendoza*. Thus, Defendant's motion to dismiss based on the speculative nature of Plaintiff's damages is hereby DENIED.

**CONCLUSION AND ORDER**

For the reasons stated in the above Memorandum Opinion, IT IS HEREBY ORDERED that Defendant's motion to dismiss is DENIED in part and GRANTED in part. Plaintiff Brewer is to submit an amended complaint consistent with this Memorandum Opinion within 30 days.

IT IS SO ORDERED.

**Dated:      May 16, 2007**                                                         /s/ Anthony W. Ishii
                                                                                             UNITED STATES DISTRICT JUDGE