# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| ROBIN BREWER, | ) | 1:06cv1324 AWI DLB |
| | ) | |
| | ) | FINDINGS AND RECOMMENDATION |
| | ) | REGARDING PLAINTIFF'S MOTION FOR |
| Plaintiff, | ) | CLASS CERTIFICATION |
| | ) | (Document 72) |
| v. | ) | |
| | ) | ORDER DENYING PLAINTIFF'S MOTION |
| | ) | TO STRIKE EXPERT DECLARATION |
| SCOTT SALYER, | ) | (Document 87) |
| | ) | |
| | ) | |
| Defendant. | ) | |

On January 8, 2008, Plaintiff Robin Brewer ("Plaintiff") filed the present motion for class certification. Plaintiff also filed a motion to strike on March 13, 2008. Both motions were heard on March 29, 2008, before the Honorable Dennis L. Beck, United States Magistrate Judge. Howard Foster, Matthew Galin and Michael Goldberg appeared on behalf of Plaintiff. Brian Maschler and Jan Kahn appeared on behalf of Defendant Scott Salyer ("Defendant").

## **BACKGROUND**

This is a RICO class action brought against Defendant based on allegations that he knowingly hired illegal immigrants at SK Foods for the purpose of depressing wages. Plaintiff brings the case on behalf of all legal U.S. citizens who worked as hourly paid employees at SK Foods during the last four years.

1    Plaintiff filed an amended complaint on June 1, 2007, which alleges that Defendant's
2 Illegal Immigrant Hiring Scheme ("Scheme") violates RICO, 18 U.S.C. § 1961, et seq. Plaintiff
3 further alleges that Defendant personally approved the Scheme which his co-conspirators
4 implement. He alleges that the conspiracy to perpetrate the Scheme is a violation of 18 U.S.C. §
5 1962(d) and that it will not stop without judicial intervention. Plaintiff seeks judgment in an
6 amount equal to three times the damage caused to the Class by Defendant's racketeering
7 activity/Scheme, pursuant to 18 U.S.C. § 1964(c), as well as attorneys' fees and costs.

8    Defendant answered the first amended complaint on June 19, 2007.

9    Pursuant to the Scheduling Order, this case is bifurcated between issues relating to class
10 certification (Phase I) and issues relating to the merits.

11   Plaintiff filed the instant motion for class certification on January 8, 2008, and seeks to
12 certify the following class:

> "Plaintiff and all other persons legally authorized to be employed in the United States who have been employed by SK Foods, LP, as either hourly-paid or piece rate workers[1] from September 22, 2002, through the present."

15   Pursuant to stipulations to extend time, Defendant filed his opposition on March 4, 2008.
16 On March 13, 2008, Plaintiff filed his reply.

17   Also on March 13, 2008, Plaintiff filed a motion to strike the expert deposition of Mark
18 Killingsworth submitted in support of Defendant's opposition to the class certification motion.

### FACTUAL BACKGROUND

20   In support of his motion, Plaintiff alleges that Defendant knows that most of the people
21 seeking unskilled, hourly-paid or piece rate employment at SK Foods are illegal immigrants and
22 are using fake or fraudulent documents. Plaintiff contends that Defendant requires hiring
23 personnel to be "wilfully blind" to the fraudulent documentation. For example, Plaintiff alleges
24 that applicants often inform hiring personnel that they were educated in Mexico and have worked
25 only in agricultural/contractor jobs while living in the United States, facts which should indicate
26 to any reasonable employer in the Central Valley that there is a high probability that such

---

[1] In opposition, Defendant points out that it does not employ "piece rate" workers.

1  workers are not legally authorized to work in the United States.  He also alleges that hiring
2  personnel often do not properly complete the I-9 forms, or complete the form before the
3  employee fills it out.
4      In opposition, Defendant explains that SK Foods' hourly employee base is only a small
5  fraction of those of its competitors for labor in the immediate area, i.e., 300 hourly workers in
6  2006, and that in order to remain competitive, it pays well in excess of the applicable minimum
7  wage, has given raises at least every other year, and keeps close track of competitors' hourly
8  wages.  Declaration of Lisa Crist ("Crist Dec."), ¶¶ 8-11.  It also employs a wide range of hourly
9  workers: 22 year-round supervisors and 31 non-supervisory positions, and at least 117 different
10 positions during peak processing season (late June-early October).  Crist Dec., ¶¶ 5, 22, 23.
11 Compensation for the year-round employees varies according to seniority, performance, job
12 responsibilities, required expertise and competitors' wages.  Crist Dec., ¶¶ 22, 23.  Wages for the
13 seasonal employees are set forth in the Rate Schedules, and are based also on these factors as
14 well as an assessment of the competitors' compensation.  Crist Dec., ¶ 5 and Exh. A.
15     SK Foods maintains a policy against hiring undocumented workers.  Crist Dec., ¶ 18 and
16 Exh. G.  Defendant states that as the president of SK Foods, he delegates the hiring of non-
17 exempt employees to the Human Resources Staff and senior plant executives.  Declaration of
18 Scott Salyer ("Salyer Dec."), ¶ 4, 6.  His office is in Monterey, California, and he visits the
19 Lemoore facility a few times a year.  Salyer Dec., ¶ 7.  He has never known or heard of the hiring
20 or retention of undocumented or illegal workers.  Salyer Dec., ¶ 6.

## DISCUSSION

22     To qualify for class certification, Plaintiff must satisfy all of the requirements of Rule
23 23(a) of the Rules of Civil Procedure and any one of the requirements of Rule 23(b).  Rule 23(a)
24 requires (1) impracticability of joinder due to numerosity; (2) commonality of questions of law or
25 fact; (3) typicality of claims; and (4) adequacy of representation.
26     The burden is on the party seeking to maintain the class action.  In this case, Plaintiff
27 must establish a prima facie showing of each of the elements of Rule 23(a) prerequisites and the
28 appropriate 23(b) ground for a class action.  Taylor v. Safeway Stores, Inc., 524 F.2d 263, 270

(10th Cir. 1975), *overruled on other grounds* by Ruckelshaus v. Sierra Club, 463 U.S. 680 (1983). The burden, however, is slight. Plaintiff need only present sufficient proof to allow the court to come to a "reasonable judgment" on each requirement. Blackie v. Barrack, 524 F.2d 891, 901 (9th Cir. 1975), *cert. denied*, 429 U.S. 816 (1976).

A.     23(a) Requirements

    1.     *Numerosity*

The class must be so numerous that joinder of all members individually is "impracticable." Fed.R.Civ.P. 23(a)(1). No specific numerical threshold is required; each case must be examined. General Tel.C. v. E.E.O.C., 446 U.S. 318, 330, 100 S.Ct. 1698 (1980). Generally, 40 or more members will satisfy the numerosity requirement. Consolidated Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2nd Cir. 1995).

Plaintiff contends that the proposed Class includes hundreds, possibly thousands, of workers at SK Foods. While Plaintiff concedes that he doesn't know the exact number, he believes that he will be able to identify which workers are *not* class members during merits discovery by examining I-9 forms, submitting documents to the Social Security Administration ("SSA") and/or Department of Homeland Security ("DHS")[2], examining "no-match" letters, and using databases such as Lexis-Nexis SmartLinx.

Although Defendant opposes the *methods* by which Plaintiff proposes to determine the class, he does not specifically oppose numerosity.

    2.     *Commonality*

A class has sufficient commonality under Rule 23(a)(2) if "there are questions of law or fact which are common to the class." Rule 23(a)(2) does not require each member in a class to have identical factual and legal issues surrounding their claim. "The existence of shared legal issues with divergent factual predicates is sufficient" to meet the requirements of Rule 23(a)(2). See Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019-1022 (9th Cir. 1998). The commonality test

---

[2] Plaintiff recognizes that the Court denied this request during Phase I, but states that he has a "good faith argument" to raise the issue again during merits discovery because determination of such facts goes to the central issue- whether SK employees are using fake documents to get work.

is qualitative rather than quantitative. Dukes v. Wal-Mart, Inc., 509 F.3d 1168, 1177 (9th Cir. 2007).

Plaintiff argues that the common questions of law and fact are "obvious and overwhelming." His argument is based on his characterization of wages as being set on a company-wide basis, without the use of any particularized criteria to individual workers. He identifies the common questions as (1) whether Defendant perpetrates the Scheme in violation of the INA and RICO; (2) whether SK Foods, through Defendant, depressed wages because of the large number of illegal workers; and (3) what is the proper measure of damages. In support of his argument, Plaintiff relies mainly on Dukes v. Wal-Mart, supra, where the Ninth Circuit upheld the district court's class certification in a Title VII sexual discrimination action, finding that the plaintiffs established commonality by providing, in part, significant evidence of company-wide corporate practices and policies.

Despite Plaintiff's argument, the characteristics of the workforce at SK Foods, when combined with the nature of Plaintiff's claims, precludes a finding of commonality. SK Foods hires employees for approximately 117 different job categories during peak processing season. Crist Dec., ¶ 5. It employs 22 permanent supervisors, who are paid hourly. The supervisor job categories range from Paste Supervisor to Lab Supervisor (I and II) and an Accounts Payable Supervisor. Crist Dec., ¶ 22. Compensation for supervisors varies, depending upon factors such seniority, performance, job responsibilities and required expertise. Crist Dec., ¶ 22. SK Foods also employs 31 non-supervisory hourly employees on a year-round basis, for positions such as Flash Cool Operator, Sanitation Lead, Office Clerk and Computer Clerk. Crist Dec., ¶ 23. These non-supervisory permanent employees are paid a variety of hourly rates according to job classification and work requirements. Crist Dec., ¶ 23. Most of the seasonal positions are compensated pursuant to a Rate Schedule. Crist Dec., ¶ 5.

SK Foods is therefore a diverse operation within a specialized, agricultural market, characteristics which do not allow for broad, all-inclusive generalizations. Indeed, Plaintiff appears to partly understand this and conceded at the hearing that supervisory positions should be

excluded from the class. The differences, though, go beyond supervisory positions, and preclude a finding of commonality.

Plaintiff's RICO cause of action will require proof that SK foods engaged in a pattern of racketeering activity by committing the predicate offense, as well as proof that each member of the class has been injured. 18 U.S.C. § 1964(c). As the Ninth Circuit explained:

> Section 1964(c) contains a causation requirement: A plaintiff must show that the defendant's RICO violation was not only a "but for" cause of his injury, but that it was a proximate cause as well. Holmes v. Sec. Investor Prot. Corp., 503 U.S. 258, 268-69, 112 S.Ct. 1311, 117 L.Ed.2d 532 (1992); Imagineering, Inc. v. Kiewit Pac. Co., 976 F.2d 1303, 1311(9th Cir.1992). A proximate cause is not the same thing as the sole cause. Cox v. Admin. United States Steel & Carnegie, 17 F.3d 1386, 1399 (11th Cir.1994). Instead, the proximate cause of an injury is "a substantial factor in the sequence of responsible causation." Id. (internal quotation omitted). Some "direct relationship" between the injury asserted and the injurious conduct is necessary. Holmes, 503 U.S. at 269, 112 S.Ct. 1311.

Oki Semiconductor Co. v. Wells Fargo Bank, Nat. Ass'n, 298 F.3d 768, 773 (9th Cir. 2002).

Courts in similar actions have recognized the difficulty of proving individual causation. In Trollinger v. Tyson Foods, Inc., 2008 WL 413635 (E.D.Tenn. 2008), plaintiffs consisted of a class of legally authorized employees who sued Tyson for RICO violations, alleging, as Plaintiff here, that Tyson knowingly hired undocumented workers to depress wages. The court found that the class could avoid summary judgment on the underlying predicate claim, but not as to injury and causation. It explained:

> Plaintiffs must also provide evidence of a direct causal link between Tyson's lower wages and Tyson's retention of some illegal employees at the Corydon, Indiana facility. Even if a jury accepts Plaintiffs' arguments that their wages were depressed and Tyson retained unauthorized employees, that is not a sufficient basis for the jury to determine one caused the other-only that both occurred. Plaintiffs' expert, Dr. Borjas, could testify generally that the employment of illegal immigrants can cause a decrease in the wages paid to employees (Court File No. 500, p. 16). However, this is meaningless if Plaintiffs cannot provide evidence that retention of unauthorized employees caused the depression of wages in this case. Without such evidence, Plaintiffs' causation argument is purely speculative. See Trollinger, 370 F.3d at 614, 620.

Trollinger, 2008 WL 413635, *13.

Trollinger involved a motion for summary judgment, and the Court recognizes that the standards governing summary judgment and class certification are very different. However, Tyson is instructive insofar as the court certified a class yet granted summary judgment based, in part, on a failure to demonstrate causation. The case is illustrative of the factual and legal issues

that would face Plaintiff's class, and when analyzed in light of the characteristics of the SK Foods work force, demonstrates why common issues of fact and law do not exist.

As in Trollinger, Plaintiff has provided nothing more than a speculative declaration in an attempt to satisfy his burden of demonstrating common issues of law and fact. Interestingly, Plaintiff's expert, Dr. Borjas, also participated in Trollinger as the plaintiffs' expert. According to his declaration submitted in this action, Dr. Borjas has not performed any analysis of this action and has instead set forth speculative conclusions that damages can be calculated using regression analysis. Declaration of George Borjas, Ph.D. ("Borjas Dec."), ¶¶ 5, 7. He has not provided any information or analysis as to the specific labor market at issue or the geographic location, nor has he set forth how he would calculate causation and damages given the diversity of the SK Foods employment structure. We know from Tyson and the nature of a RICO action that causation and damages are specific, individualized issues. When combined with the characteristics of employment at SK Foods, these issues become even more individualized. Plaintiff has therefore failed to carry his burden of demonstrating common issues of law and fact.

An analysis of the Dukes case relied upon by Plaintiff does not change this result. Plaintiff cites Dukes in support of his belief that a class can be certified despite differences in the class membership. In the Northern District's original Dukes decision, the court found class certification proper, despite class members in 3400 stores across the country, because "each store operates in a basically similar fashion using similar job categories, job descriptions, and management hierarchies..." Dukes v. Wal-Mart Stores, Inc., 222 F.R.D. 137, 146 (N.D. Cal. 2004). In fact, Plaintiff believes that the instant class will be easier to certify than the class in Dukes because, for instance, all of the proposed members are in one location.

Indeed, classes have been certified in numerous instances where there are multiple locations or multiple job descriptions. However, the decision to do so must take into account the type of claim asserted and the requested relief. See General Tel. Co. Of Southwest v. Falcon, 457 U.S. 155 (9182) (there must be issues of common to the class as a whole and relief must turn on questions of law applicable in the same manner to each member of the class). Dukes involved allegations of sexual discrimination, allegations that don't require the type of individual and

1 specific causation and damages analyses as the RICO action asserted by Plaintiff.  More
2 importantly, though, the Dukes plaintiffs submitted an abundance of evidence to met their
3 burden, including factual evidence, expert opinion evidence, expert statistical evidence and
4 anecdotal evidence.  Dukes, 509 F.3d at 1178-1183.  Plaintiff has not done so here.

5       Plaintiff is therefore unable to demonstrate commonality.  While the Court recognizes
6 that this is a minimal burden, and that the commonality preconditions of Rule 23(a)(2) are less
7 rigorous than the companion requirements of Rule 23(b)(3), it is Plaintiff's burden nonetheless.

8       3.  *Typicality*

9       Rule 23(a)(3) requires that "the claims or defenses of the representative parties [be]
10 typical of the claims or defenses of the class."  In General Tele. Co. of the Southwest v. Falcon,
11 457 U.S. 147, 102 S.Ct. 2364 (1982), the Court noted "[t]he commonality and typicality
12 requirements of Rule 23(a) tend to merge."  457 U.S. at 157 n. 13, 102 S.Ct. 2364.  A named
13 plaintiffs' claim is "typical" under Rule 23 if it arises "from the same event or practice or course
14 of conduct that gives rise to the claims of the other class members and his or her claims are based
15 on the same legal theory."  Ballard v. Equifax Check Services, 186 F.R.D. 589, 595 (E.D.Cal.
16 1999).

17       Plaintiff argues that typicality exists because all class members are "united in their effort
18 to prove that their wages have been depressed" by the Scheme.  He further contends that they do
19 not individually bargain for their wages and there are no "unique defenses." Motion, at 11.

20       In opposition, Defendant argues that Plaintiff fails to show that he occupies the same
21 labor market as the other class members.  He worked as a seasonal worker for only six weeks in
22 2004, earning $14.35 an hour.

23       The Court agrees with Defendant.  Plaintiff has made no showing that his claims are
24 typical of employees who worked at the company in other years, in other positions, and who
25 enjoyed different levels of compensation.  As the Court touched upon in discussing commonality,
26 the agricultural labor market is quite different than standard, year round businesses.  It is a very
27 specific market with distinct needs and huge variations among positions and workers.  For this
28 reason, and given Plaintiff's specific employment at SK Foods, he cannot show that his claims

are typical of the class. See eg Mendoza v. Zirkle Fruit Co., 222 F.R.D. 439, 443 (E.D. Wash. 2004) (finding that "minimal contact" precluded a finding of typicality as to plaintiff's proposed class relating to one Defendant).

### 4. *Adequacy of Representation*

The person representing the class must be able "fairly and adequately to protect the interests" of all members in the class. Fed.R.Civ.P. 23(a)(4). The representation is "adequate" if the attorney representing the class is qualified and competent and the class representatives are not disqualified by interests antagonistic to the remainder of the class. Lerwill v. Inflight Motion Pictures, Inc., 582 F.2d 597, 512 (9th Cir. 1978).

The Court does not question Mr. Foster's competency as an attorney and Defendant has not provided any reason to find that his representation would be less than adequate. In any event, such a determination is not necessary given the Court's finding that Plaintiff cannot satisfy commonality and typicality under 23(a).

### B. 23(b) Requirements

Plaintiff requests that the Court certify the class under Rule 23(b)(3), which provides for certification when:

> (3) the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

The 23(b)(3) requirements, of course, are only worthy of discussion when all requirements under 23(a) have been met. Since the Court found that Plaintiff has not carried his burden of meeting the 23(a) requirements, a discussion as to whether the questions of law or fact predominate over individual issues and/or whether a class action format is superior is not necessary. To be sure, the predominance requirement of Rule 23(b)(3) is more stringent than the commonality requirement of Rule 23(a)(2), and the analysis under Rule 23(b)(3) "presumes that the existence of common issues of fact or law have been established pursuant to Rule 23(a)(2)."

Hanlon, 150 F.3d at 1019-1022. As Plaintiff cannot demonstrate commonality under the more permissive standard of 23(a), he can not do so under the heightened standard of 23(b).

## RECOMMENDATION

Accordingly, based on the above, the Court recommends that Plaintiff's motion for class certification be DENIED.

This Findings and Recommendation is submitted to the Honorable Anthony W. Ishii, United States District Court Judge, pursuant to the provisions of 28 U.S.C. section 636 (b)(1)(B) and Rule 72-304 of the Local Rules of Practice for the United States District Court, Eastern District of California. Within thirty (30) days after being served with a copy, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." The Court will then review the Magistrate Judge's ruling pursuant to 28 U.S.C. § 636 (b)(1)(C). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

## ORDER

In the course of briefing this motion, Plaintiff moved to strike the Declaration of Mark Killingsworth, Ph.D., submitted in support of Defendant's opposition. Plaintiff believes that the declaration, which critiques Dr. Borjas' deposition testimony, goes beyond the subject matter contemplated in expert designation and should therefore be stricken. However, Professor Killingsworth's opinions are fairly within the subject matter for which he was designated. Moreover, because Dr. Borjas had not been deposed at the time of the designation, Professor Killingsworth's declaration could not have included a critique at that time. Anticipating this, his initial expert disclosure stated that his conclusions were "subject to a supplementation of the discovery record and a further particularization of Dr. Borjas' analysis and conclusions. . ."

Accordingly, Plaintiff's motion to strike is DENIED.

IT IS SO ORDERED.

Dated:   **April 3, 2008**         /s/ **Dennis L. Beck**
                        UNITED STATES MAGISTRATE JUDGE