**IN THE UNITED STATES DISTRICT COURT FOR THE**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **ROBIN BREWER,** | CV F 06-1324 AWI DLB |
|            **Plaintiff**, | **ORDER GRANTING MOTION FOR CLASS CERTIFICATION AND PROVISIONALLY MODIFYING CLASS DESCRIPTION** |
| v. | |
| **SCOTT SALYER** | |
|            **Defendant**. | |

This is an action by plaintiff Robin Brewer ("Plaintiff" or "Brewer") to recover damages in the form of lost wages that were allegedly caused by defendant Scott Salyer ("Defendant") who is alleged to have engaged in a scheme to drive down wages by purposefully hiring illegal immigrant laborers in violation of the Immigration and Nationality Act, 8 U.S.C. § 1324 et seq. ("INA")[1], and the Racketeer Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. § 1961(1)(F). Plaintiff alleges Defendant is president of SK Foods, LP ("SK Foods"), a large food processing corporation located in the Eastern District of California. On January 8, 2008, Plaintiff filed a motion for certification of a plaintiff class to consist of all persons employed by SK Foods as either hourly wage or piece workers from September 22, 2002, who are United States citizens or who are legally entitled to work in the United States. On April 3, 2009, the Magistrate Judge issued Findings of Fact and Recommendations of Law (hereinafter, the "April 3 F&R's") that recommended denial

---

[1] The enactment codified at 8 U.S.C. § 1324 et seq. is alternatively referred to in case authority as the "Immigration and Nationality Act, see, e.g., Gete v. INS, 121 F.3d 1285, 1288 (9th Cir. 1997), or as the "Immigration and Naturalization Act." See, e.g., Mendoza v. Zirkle Fruit Co., 301 F.3d 1163, 1168 (9 Cir. 2002). The abbreviation "INA" incorporates both designations.

of Plaintiff's motion for class certification. For the reasons that follow, the court will adopt in part and modify in part the Magistrate Judge's April 3 F&R's.

**LEGAL STANDARD**

This court reviews de novo those portions of the proposed findings of fact to which objection has been made. 28 U.S.C. § 636(b)(1); McDonnell Douglas Corp. v. Commodore Business Machines, 656 F.2d 1309, 1313 (9th Cir.1981), cert. denied, 455 U.S. 920, 102 S.Ct. 1277, 71 L.Ed.2d 461 (1982). As to any portion of the proposed findings of fact to which no objection has been made, the court assumes its correctness and decides the motions on the applicable law. See Orand v. United States, 602 F.2d 207, 208 (9th Cir.1979). The magistrate judge's conclusions of law are reviewed de novo. See Britt v. Simi Valley Unified School Dist., 708 F.2d 452, 454 (9th Cir.1983).

Certification of a class action is governed by Rule 23 of the Federal Rules of Civil Procedure.[2] "In order to obtain class certification, [a] plaintiff must first satisfy Rule 23(a)'s requirements of numerosity, commonality, typicality, and adequacy of representation." Coleman v. Gen. Motors Acceptance Corp., 296 F.3d 443, 446 (6th Cir. 2002). Additionally, in order to maintain a class action, a plaintiff "must demonstrate that the class fits under one of the three subdivisions of Rule 23(b)." Id. In the instant case, Plaintiff contends this action may be maintained as a class action because it satisfies Rule 23(b)(3)'s requirement that the court find "that the questions of law or fact common to class members predominate[s] over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

**PROCEDURAL HISTORY AND FACTUAL ALLEGATIONS**

The original class action complaint was filed in this action on September 26, 2006.

---

[2] All reference to "Rules" hereinafter are to the Federal Rules of Civil Procedure unless otherwise specified.

The original complaint alleges as RICO predicate acts violation of 8 U.S.C. § 1324(a)(1)(A)(iii), harboring illegal aliens, and 8 U.S.C. § 1324(a)(3), importing illegal aliens for employment. Both are aggravated offenses under the INA and qualify as RICO predicate offenses. Defendant moved to dismiss the complaint on December 28, 2006, challenging the adequacy of the allegation of the predicate RICO acts, whether a RICO enterprise and conspiracy had been adequately alleged and challenging Plaintiff's damage claims as being too speculative. In an order filed May 17, 2007, (the May 17 Order") the court found that the complaint did not adequately allege the RICO predicate offense of "harboring" illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(iii). The court found that the complaint did sufficiently allege importation of illegal aliens in violation of 8 U.S.C. § 1324(a)(3), and that RICO enterprise and conspiracy were adequately alleged. The May 17 Order also found that Plaintiffs allegation of damages was not so speculative as to warrant dismissal.

The currently-operative First Amended Complaint ("FAC") was filed on June 1, 2007. It is substantially the same as the original complaint except that the allegation of violation of 8 U.S.C. § 1324(a)(1)(A)(iii) as a RICO predicate act is omitted. The FAC alleges Defendant is liable under RICO because Defendant personally participated in a scheme to "knowingly hire for employment at least 10 individuals with actual knowledge that the individuals are [unauthorized] aliens" who were brought into the United States as described in 8 U.S.C. § 1324(a)(3)(B)(i) and (ii) in violation of the INA. It is not disputed that violation of the INA is a RICO predicate offense.

The FAC alleges Defendant committed the RICO predicate offense by approving hiring criteria that deliberately ignored factors that would have put any reasonable employer on notice of the illegal immigrant status of the job applicant. Those factors include "(1) hiring workers who cannot speak English while claiming to be U.S. Citizens or Lawful Permanent Residents; (2) hiring workers who are recent arrivals to the U.S. and claim to be U.S. Citizens or Lawful Permanent Residents; (3) hiring workers who present authorization

3

documents which are invalid on their face because the pictures are of a different person, are upside down, are on poor quality paper, etc.; (4) hiring workers who are personally known to SK Foods' hiring staff to be in the U.S. illegally and are using false documents; (5) hiring workers who have previously been employed by SK Foods under different identities. A majority of the Company's hourly workforce falls into one or more of these categories."
Doc. # 38 at 4: 25-5:8.

Relevant to Defendant's contentions regarding Plaintiff's ability to prove damages on a class-wide basis, the declaration of Plaintiff's expert, George Borjas, Ph.D. ("Borjas") provides an overview of proposed methodology to be used for the computation of damages. See Doc. # 73-7, Exhibit "L" to Plaintiff's Memorandum in Support of the Motion for Class Certification. Borjas' declaration states, in pertinent part:

> This body of research [on the impact of immigrants on native earnings and employment] uses fundamental theoretical models of labor supply and demand to determine the impact of increased immigration on the wage and employment opportunities of U.S. Workers. These models typically use regression analysis where compensation or some other labor market outcome is the dependent variable and firm and worker characteristics serve as control variables. The theoretical models and empirical methodologies found in the literature provide appropriate techniques that may be used to estimate the impact of [Defendant's] practice of employing illegal workers on the earnings of their employees who where legally authorized to work in the United States. [¶] These models can be adapted to determine the damages to the Plaintiffs, collectively and individually, on a class-wide basis. Using information that can be obtained from SK Foods to identify the legal status of their workers as well as other individual characteristics, the model may be applied to each member of the class.

Doc. # 73-7 at ¶¶ 5-6.

The motion to certify the class was filed on January 8, 2008. Defendant filed an opposition on March 4, 2008, and Plaintiff filed a reply on March 13, 2008. Plaintiff's objection to the Magistrate Judge's F&R's was filed on April 16, 2008. Defendant's response was filed May 2, 2008.

## DISCUSSION

The April 3 F&R's recommend denial of Plaintiff's motion for class certification

based on Plaintiff's failure to demonstrate compliance with the provisions of Rule 23, subdivision (a)(2), which requires that there be "questions of law common to the class;" and subdivision (a)(3) which requires that the "claims and defenses of the representative parties are typical of the claims or defenses of the class." The April 3 F&R's notes that, although Defendant opposes the method Plaintiff proposes to determine class membership, Defendant does not contend that the numerosity requirement of subdivision (a)(1) is not met. The court therefore adopts the Magistrate Judge's determination that the requirement for numerosity as set forth in Rule 23(a) is deemed met as unopposed. The court similarly adopts the Magistrate Judge's finding that the requirement for adequacy of representation as set forth in Rule 23(a)(4) is met. Having adopted the Magistrate Judge's findings and conclusions with respect to Rules 23(a)(1) and (a)(4), this discussion will focus on the question of whether the commonality requirement of Rule 23(a)(2) and the typicality requirement of Rule 23(a)(3) are met. If the requirements of Rules 23(a)(2) and (3) are met, the court will proceed to analyze whether Plaintiff's proposed class meets the requirement of Rule 23(b)(3) that common legal issues predominate.

**I. Marin v. Evans, Mendoza v. Zirkle Fruit, and Trollinger v. Tyson Foods, Inc.**

Central to the court's consideration of Plaintiff's motion for class certification is a trio of district court cases that each address motions for certification of class actions in cases such as the one at bar where the plaintiffs allege their rate of pay has been depressed by an unlawful scheme to employ immigrant laborers. Marin v. Evans, 2008 WL 2937424 (E.D. Wash. 2008); Trollinger v. Tyson Foods, Inc., 2006 WL 2924938 (E.D. Tenn. 2006); and Mendoza v. Zirkle Fruit Co., 222 F.R.D. 439 (E.D. Wash. 2004) each represent a district court's approach to motions for class certification in the factual context of a complaint alleging members of the putative class were damaged by a scheme or conspiracy wherein the defendants knowingly hired illegal aliens who were not entitled to work in the United States

in order to drive down wages in violation of RICO.³ In all three cases, as in the instant case, the RICO claims were predicated on the allegation of violation of the penalty provisions of the INA, 8 U.S.C. § 1324 (referred to in Trollinger as the "Immigration Reform and Control Act"). None of these cases is, of course, controlling on this court's determination of Plaintiff's motion for class certification. However, the fact that district courts overseeing these and other similar cases appear to have regularly granted class certification on facts not significantly different from the facts of this case cautions against any impulse to give less than careful consideration to Plaintiff's objections to the F&R's.

As noted previously, the court's decision on Plaintiff's motion for class certification turns primarily on the issues of whether Plaintiff's proposed class meets the Rule 23(a)(2) and (3) requirements of commonality and typicality. The court will consider each in turn. Should the court find the requirements of Rule 23(a) are met, it will take up the issue of whether Plaintiff's proposed class also meets the requirement of Rule 23(b)(3) that common legal issues predominate over individual legal issues; an issue not addressed by the April 3 F&R's.

**II. Commonality**

"Rule 23(a)(2) requires that for certification there must be 'questions of law or fact common to the class.'" Trollinger, 2006 WL 2924938 at *5. The commonality requirement of Rule 23(a)(2) is less stringent that the predominance requirement of Rule 23(b)(3). Id. at *6. For purposes of the commonality requirement, "[t]he existence of shared legal issues with divergent factual predicates is sufficient, as is the common core of salient facts coupled with disparate legal remedies within the class." Hanlon v. Chrysler Corp., 150 F.3d 1011,

---

³ The similarity between the listed cases is not coincidental. Each of these three cases, as well as several other cases based on identical legal theories and having very similar fact patterns appear to involve the same principle law firm and attorney, Howard W. Foster. See, e.g., Williams v. Mohawk Indus., 465 F.3d 1277 (11th Cir. 2006); and Parez-Farias v. Global Horizons, Inc., 2007 WL 951869 (E.D. Tenn. 2007). The court notes that the district courts presiding over the actions in both Williams and Parez-Farias appear to have granted motions for class certification in both cases. In Hernandez v. Balakian, 06cv1383 OWW DLB, a case essentially identical to the one at bar, this court denied class certification for reasons not relevant to the instant case.

6

1019 (9th Cir. 1998). "The commonality test is qualitative rather than quantitative – one significant issue common to the class may be sufficient to warrant certification." Dukes v. Wal-Mart, 509 F.3d 1168, 1177 (9th Cir. 2007).

Plaintiff contends there are three common questions that apply to all proposed class members: (1) did Defendant perpetuate the hiring scheme in violation of the INA and RICO, (2) Did the scheme of hiring large numbers of illegal alien workers cause depression of wages earned by the Plaintiff class, and (3) "what is the proper measure of damages?" Doc. # 73 at 13:15-17. In Marin, the district court accepted the three listed common questions as sufficient for purposes of Rule 23(a)(2) without further comment. Likewise, the district court in Trollinger, found the commonality requirement satisfied without further elaboration based on the first and second of the above-listed common issues.

In Mendoza, the court took a slightly different tack by noting that the defendants in that case had successfully attacked the adequacy of the plaintiff's proposed class based on the original designation of a single class that had two different employers and that included workers that worked in two different branches of the defendant operations (warehouse and orchard). 222 F.R.D. at 443-444. Following briefing by the parties in Mendoza, the proposed plaintiff class was divided into three groups. Id. The court then granted motions for class certification to two of the groups even though, for one of the two groups, the proposed class contained both seasonal and full time workers, some of whom had been hired by the defendant and some of whom had been hired by a third-party contractor. The second group was granted class certification notwithstanding the fact that the workers performed a wide variety of jobs at differing orchard locations. Id. at 449. Class certification was not granted as to the third plaintiff class for reasons that are not relevant here. As to the first and second plaintiff classes, the Mendoza court found that the alleged variations in employment circumstance within the employer organization was not a sufficient reason to deny class certification in light of Stanton v. Boeing Co., 327 F.3d 938 (9th Cir. 2003).

Defendant opposes the adequacy of Plaintiff's claim of common issues of fact or law primarily on the fact Defendant's company supports in excess of 100 separate job descriptions during times of peak activity. Defendant contends the Magistrate Judge was correct in concluding that the variety in job descriptions, "combined with the nature of Plaintiff's claims, precludes a finding of commonality." Doc. # 92 at 5:14. Both Defendant's and the Magistrate Judge's analysis couples the fact of the multiplicity of job descriptions at SK Foods, together with the anticipated difficulty in proving the "but for" causal connection between the alleged hiring scheme and each potential plaintiff's damages to reach the conclusion that the factual context of this action does not satisfy the commonality requirement of Rule 23(a)(2). The court has three concerns with this analysis.

First, while it is true that issues of commonality, typicality and adequacy of representation tend to merge together analytically, Mendoza, 222 F.R.D. at 442 (citing Alchem Prods, Inc. v. Windsor, 521 U.S. 591, 626 n.20 (1997)), it is useful at this point to maintain a separation between commonality – which looks for issues of law *or* fact that are *common* to all claims – and typicality – which looks at the ability of the *named* plaintiff(s) to advance the interests of all class plaintiffs by asserting claims or defenses that benefit all class members equally. See Mendoza, 222 F.R.D. at 444-445. The court feels that Defendant's and the Magistrate Judge's concerns over the issues of multiplicity of job descriptions and potential problems in proving claims are relevant to the issues of typicality and adequacy of representation, but are less directly implicated where commonality is concerned.

Second, the court is concerned that the Magistrate Judges F&R's may reflect a more rigorous evidentiary standard for certification of a class under Rule 23 than is warranted. Defendant correctly points out that, in order to determine if Plaintiff has met the Rule 23(a) requirements of commonality and typicality, the court must necessarily examine the factual and legal underpinnings of Plaintiff's cause of action. General Telephone Co. v. Falcon, 457

U.S. 147, 160 (1982). However, based on the examples illustrated by Marin, Trollinger, and Mendoza, the court concludes that the examination of the factual basis of Plaintiffs' cause of action is limited to a determination that Plaintiff has adequately alleged the *existence* of evidence of Defendant's wrongdoing and has articulated a plausible theory connecting Defendant's wrongdoing with the harm each class member is alleged to have suffered.

> "It is particularly important at this point to focus on the task before the court in considering a motion for class certification. The court is not to consider the merits of the claim; . . . . Instead, the court is only to consider whether the type of proof offered by plaintiffs . . . will be of classwide character such that class action treatment of the case will be superior to myriad individual actions." [Citations.] The relevant inquiry here is whether generalized evidence *exists* which will prove or disprove Plaintiffs' claims on a simultaneous, class-wide basis. [Citation.]

Trollinger, 2006 WL 2924938 at *10 (citing Zuccarini v. Hoechst, 200 F.R.D. 326, 350 (E.D. Mich. 2001) (italics added)).

What the court finds it need not assess at this point is the probability that Plaintiff will actually be able to produce sufficient evidence to support the allegation of Defendant's wrongdoing or that Plaintiff's theory linking the wrongdoing to the class members' harm will stand up to challenge under a summary judgment motion. To the extent the Magistrate Judge's F&R's reflect a level of doubt as to Plaintiff's ultimate ability to demonstrate violation of the intent and knowledge elements of the INA or demonstrate a statistically valid causal connection between the alleged wrongdoing and harm to the class members, the court shares those doubts. A motion for class certification, however, is simply not the right place to assess the sufficiency of evidence to establish Plaintiff's substantive claims.

The court also recognizes that this action is one of many "civil RICO actions that have been filed in various federal courts across the nation, capitalizing on the popular outcry against undocumented aliens who are working openly in the United States." Nichols v. Mahoney, 2009 WL 928092 (S.D.N.Y. 2009) at *1. As such, it is probably not unreasonable to characterize Plaintiff's action as "boilerplate" or constructed of "recycled" allegations. Defendant has alleged facts that, if adequately supported, will defeat Plaintiffs' claims and

9

the court is mindful of the inherent difficulty in proving the intent element of the alleged RICO violation as illustrated by the failure of the action in Trollinger to survive summary judgment. None of this is relevant to the decision at hand. As reflected in Trollinger, class certification requires only a demonstration of the *existence* of evidence tending to prove or disprove an issue common to the proposed class members. The adequacy of that evidence must be tested later, on an adequate record.

Third, Trollinger, the case upon which Defendant and the Magistrate Judge placed most reliance in concluding that the requirement for commonality was not met because of the anticipated difficulty of proving causation under the RICO statute, actually provides a powerful, if not compelling, argument for finding the commonality requirement met. As the Magistrate Judge and Defendant noted, the defendants in Trollinger, were granted summary judgment on their RICO claims primarily because the plaintiff could not prove a causal connection between the alleged RICO violation (in that case, harboring illegal immigrants) and the damages claimed by Plaintiff. See Trollinger v. Tyson Foods, Inc., 543 F.Supp.2d 842, 859-860 (E.D. Tenn. 2008)(granting summary judgment as to one of two alleged RICO predicate acts and granting summary judgment as to all RICO claims based on inability to show causation). The crucial point for present purposes, however, is that the RICO action in Trollinger ran aground at the summary judgment stage, two years *after* the plaintiff had been granted class certification. When the district court granted class certification in Trollinger, it looked to the *existence* of two common legal issues – whether there was an illegal immigrant hiring scheme and whether wage depression resulted – not to the probability that the plaintiff would prevail as to either issue. See Trollinger, 2006 WL 2924938 at *6.

If the district courts' grants of class certification in Trollinger, Marin, and Mendoza teach anything, it is that a finding that the commonality requirement of Rule 23(a) is satisfied hinges on whether one or more issues of law or fact can be articulated that are common to all members of the putative class; not on whether the plaintiff is likely to prevail as to any of the

common issues. In the instant case, the court has no doubt that at least one issue of law and fact articulated by Plaintiff – whether an Illegal Hiring Scheme qualifying as a predicate act under RICO exists at SK Foods – is indeed common to all class members. The test for purposes satisfaction of the commonality requirement is not whether Plaintiff's can prove the existence of the scheme, the test is whether Plaintiff can maintain any claim against any defendant under the complaint without ultimately proving the existence of the scheme. Because the existence of the Illegal Hiring Scheme is absolutely necessary to all claims asserted by Plaintiff, the issue is strongly common to all class members. The court finds that this is sufficient for Purposes of the commonality requirement of Rule 23(a). See Dukes, 509 F.3d at 1177 (commonality requirement is qualitative, not quantitative).

The court also finds that the question of whether Plaintiff can successfully establish a causal connection between the alleged violation of the INA and harm to the class members based on statistical regression analysis is also a question common to all members of the putative class, albeit with some qualifications. The court will discuss *infra* whether the proposed class may be too inclusive with respect to Plaintiff's theory of causation and may adjust the proposed class according to its analysis of typicality. For purposes of commonality, however, the court finds that whether Defendant violated the INA is an issue of mixed law and fact that is common to, at minimum, all SK Foods' employees whose wages are determined by reference to the alleged hourly wage schedule.

**III. Typicality**

Rule 23(a) requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."

> Typicality determines whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct. In other words, when such a relationship is shown, a plaintiff's injury arises from or is directly related to a wrong to a class, and that wrong includes the wrong to the plaintiff. Thus, a plaintiff's claim is typical if the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or here claims are based on the same legal theory.

11

In re American Medical Systems, 75 F.3d 1069, 1082th (6 Cir. 1996). In short, the claims of the representative plaintiff are "typical" "if they are reasonably coextensive the those of absent class members; they need not be identical." Hanlon, 150 F.3d at 1020.

The representative plaintiff in this case, Robin Brewer ("Brewer"), is alleged by Defendant to be/have been a seasonal worker in a single job category (out of a total of 117 job categories). The question the court must resolve is whether the evidence Brewer adduces to prove that he/she was injured by Defendant's alleged wrongful conduct, will similarly advance each class member's claim. Brewer's ability to prevail hinges on his/her ability to prove that Defendant: (1) knowingly hired at least 10 individuals with actual knowledge the individuals were aliens not authorized to work in the United States in violation of 8 U.S.C. § 1324(a)(3)(A), and (2) that the violation proximately caused the depression of wage rates affecting wages paid to Plaintiff . The first element is purely factual and is an element that is equally applicable to the establishment of every proposed class member. What is not so clear is whether the evidence Brewer adduces to show that the violation of 8 U.S.C. § 1324(a)(3)(A), and (2) that proximately caused harm in his/her case will be equally applicable to showing harm with regard to all other proposed class members.

As the court understands Plaintiff's proffer of evidence supporting his theory of damages, Borjas proposes to analyze evidence easily obtainable from employment records in order to show the practice of hiring illegal aliens by an enterprise depresses wages paid by that enterprise by reducing the demand for native workers. The theory, as the court understands it, is that illegal foreign workers, who are willing to work for sub-standard wages, reduce demand for native workers in proportion to the prevalence of the foreign workers competing for the available jobs. Plaintiff alleges that the depression in wages caused by the hiring of illegal foreign workers is reflected in a schedule of hourly wages that is not negotiated between the worker and employer. Plaintiff's theory recognizes that, while the percent of depression in the wage rates may be subject to some variation as between job

descriptions that are paid according to the hourly wage schedule, all hourly wages reflected in the wage table are depressed to some extent where the same mechanism operates.

Logic dictates that, since the mechanism driving the downward pressure on worker wages is the availability of illegal aliens who are willing to work for lower wages in competition with native workers for a limited number of jobs, that the mechanism operates to depress wages only where illegal aliens represent a substantial proportion of job applicants. It follows that where there is not a ready pool of illegal aliens applicants, there is no depressive effect on the wages paid and therefore no causal connection between the illegal hiring scheme and harm to the employee. Logic also dictates that at some level in the organization, the alleged illegal immigrant hiring scheme was either overseen by persons who cannot claim to have been harmed by the scheme or that job descriptions exist for which there is no ready supply of illegal aliens competing for the jobs.

As expressed in the FAC, Plaintiff's proposed class consists of Brewer and "all other persons legally authorized to be employed in the U.S. who have been employed by SK Foods as hourly wage earners at its California processing plants in the last four years." Doc. # 38 at ¶ 7. Brewer is/was an hourly *seasonal* employee. It is not clear to the court based on the pleadings before it whether all hourly employees are seasonal. It is also not clear whether the persons who allegedly administered the illegal hiring scheme or who occupied positions for which there were no illegal alien applicants included at least some hourly workers.

The court can easily accept that Brewer satisfies the typicality requirement as to the alleged majority of workers at SK Foods during the time period in question; that is, all *seasonal* hourly workers.[4] However, the court lacks information at this time to determine wether the class proposed by Plaintiff – "all hourly wage earners" – is overly-inclusive in that it may include persons who were/are not employed in positions for which there exists a ready

---

[4] Defendant states and Plaintiff does not dispute that SK Foods does not employ any "piece" rate workers.

13

pool of illegal immigrant applicants. In this order, the court will provisionally modify the proposed plaintiff class pursuant to Rules 23(c) and (d) to include only *seasonal* hourly wage earners working at SK Foods within the time period specified. The court will permit the parties to stipulate to an alternative class description or will, upon motion of a party, refer the matter to the Magistrate judge for a more careful determination of the scope of the class to be certified.

Plaintiff's theory of causation is essentially identical to the theory set alleged in Trollinger, 2006 WL 2924938 at * 10, Mendoza, 222 F.R.D. at 447, and Marin, 2008 WL 2937424 at *4. In each case, the district court recognized that the mechanism alleged to have caused harm was a reflection of the policy of the defendant to hire illegal aliens and the policy is alleged to have caused the same kind of harm to both the representative plaintiff and the class plaintiffs. Based on that analysis, the district courts in those cases found the requirement of typicality met. In the instant case, the court sees no reason to depart from the examples that have already been set in cases that, despite Defendant's assertions to the contrary, are not significantly different from the case at bar. The representative Plaintiff in this case was a seasonal hourly worker who is alleged to have been damaged because his wages were depressed by Defendant's unlawful policy of hiring illegal immigrant workers. Given the court's restriction of the class to seasonal hourly wage workers, the representative plaintiff's claim is exactly the same claim that is alleged on behalf of every member of the Plaintiff class. Whether Plaintiff can actually provide the requisite proof is irrelevant for purposes of class certification. Because the claims and defenses of the representative Plaintiff are the same as those of the proposed Plaintiff class, the court finds the requirement of typicality met.

**IV. Rule 23(b) – Predominance and Superiority**

As previously noted, Plaintiff seeks to certify the proposed class pursuant to Rule 23(b)(3), which provides that "[a] class action may be maintained if Rule 23(a) is satisfied

14

and if :

> (3) the court finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> > (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
> >
> > (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
> >
> > (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
> >
> > (D) the likely difficulties in managing a class action.

### *A. Predominance*

"'The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.' [Citation.]" Mendoza, 222 F.R.D. at 446. "'Implicit in the satisfaction of the predominance test is the motion that the adjudication of common issues will help achieve judicial economy.' [Citation.]" Marin, 2008 WL 2937424 at * 5 (quoting Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1189 (9th Cir. 2001)).

The two issues previously discussed as common to all members of the class are also the legal hinge pins for all of Plaintiff's claims. As previously noted, if Plaintiff cannot prove *both* that Defendant knowingly hired illegal aliens in violation of the INA, *and* that Defendant's violations were the proximate cause of harm to Plaintiff, then Plaintiff cannot prevail on any claim against any defendant. Conversely, if Plaintiff is able to prove both the violation and proximate causation, relatively little would remain to be adjudicated save for the determination of what factor of depression of wages should be applied to a given job description or set of job descriptions. See Mendoza, 222 F.R.D. at 447 ("jury will be asked to determine the rates of compensation that various jobs would have merited but for the alleged hiring scheme").

The prior cases whose factual contexts and legal theories are substantially similar to

those of the present case , including specifically Trollinger, indicate that the issues of whether Defendant violated the INA and whether Plaintiff can prove causation are the true pressure points of this type of action. In each of the cases cited in this order, it appears to this court that the plaintiff's ability to prevail is substantially if not entirely dependant on the plaintiff's success in proving these two issues. It clearly serves the interests of efficient use of judicial resources to certify and maintain class representation in this action at least to the point that the issues of violation of the INA and proximate causation can be adjudicated on a full and complete record. The court finds that the requirement of predominance is met.

### B. Superiority

Rule 23(b)'s superiority requirement "involves a determination with respect to 'whether the objectives of the particular class action procedure will be achieved in the particular case.' [. . . .] 'this determination' said the Ninth Circuit, 'necessarily involves a comparative evaluation of alternative mechanisms of dispute resolution.' [Citation.]" Mendoza, 22 F.R.D. at 448 (quoting Hanlon, 150 F.3d at 1203). Rule 23(b) specifies four factors courts should examine in determining the superiority of class action. The court examines each in order.

#### 1. Interest of the Class Members in Controlling Their Claims

This is one area where some narrowing of the class definition is beneficial. If the class is narrowed to hourly *seasonal* wage workers at SK Foods, the benefits of class administration of the claims is overwhelming. Damages with respect to the proposed class would be measured as a percentage of the wages earned during time period specified that corresponds to the amount by which wages for a worker's job class were depressed by the alleged illegal hiring scheme. While the amount of damages might be substantial in some cases, there is little reason to suspect the amount would be enough to attract attorney representation where claims are adjudicated separately as to each worker. Further, given the costs of litigation, the motivation provided by the prospect of a relatively modest recovery of

damages is minimal. The court concludes the relatively modest expected recovery per claim weighs heavily in favor of class adjudication of the claims.

### *2. Extent and Nature of Other Litigation*

So far as the court is aware, there is no other litigation concerning this controversy involving any member of the proposed class.

### *3. Desirability of Concentrating Litigation in this Forum*

Plaintiff alleges that all events giving rise to this action occurred within the Eastern District and that Defendant is a resident of this district. Defendant alleges SK Foods is at a single location in Lemoore in the Eastern District. Given that all parties agree that all events relating to this action took place in this district, there is no reason the litigation should not be concentrated in this forum.

### *4. Management*

Whether the difficulties encountered in the management of the suit as a class action would be substantially greater than the difficulties encountered in managing individual cases is usually the most hotly contested issue pertaining to the court's determination of superiority of class action adjudication. Trollinger, 2006 WL 2924938 at *9. With respect to the issue of superiority under Rule 23(b), Defendant makes three basic contentions pertaining to manageability of the action as a class action. First, Defendant contends that the individual questions Defendant contends predominate the question of liability and damages makes the suit unmanageable as a class action. Second, Defendant contends the problems of identification and notification of class members is unmanageable, and third Defendant points to the difficulty in proving damages according to Plaintiff's proposed statistically-based theory.

Defendant's contentions with regards predominance of individual issues has been discussed. Basically, the court has concludes that common issues predominate at least for the determination of liability, and that such individual determinations as may be necessary to

17

determine damages are manageable.

With regard to identification and notification of proposed class members, Plaintiff contends the personnel records of SK Foods contains the information necessary to make a determination as to class membership. Specifically, Plaintiff contends that examination of I-9 forms and matching of names and social security registration forms is sufficient to identify members of the class. This method, as Plaintiff points out, was sufficient in Trollinger, and the court has little reason to believe at this point that using I-9 forms and Social Security numbers will not be sufficient to identify class members in the instant case.

The remainder of Defendant's objections to Plaintiff's claim of superiority of class management of claims centers around anticipated difficulties in proving either liability using an untested legal theory or damages using a statistical method that Defendant claims must fail by its own terms. As previously stated, the court is not inclined to test the probability or improbability of Plaintiff's proofs at this juncture. Challenge to the substance of Plaintiff's claims are appropriate when the record is fully developed.

**CONCLUSION AND ORDER**

For the reasons discussed above, the court hereby ADOPTS in part and DECLINES to ADOPT in part the Magistrate Judge's Findings of Fact and Recommendations of Law dated April 3, 2009. The court hereby GRANTS Plaintiff's motion for class certification. The class shall consist of all SEASONAL HOURLY WAGE EARNERS employed by SK Foods between June 1, 2003, and June 1, 2007. The parties may stipulate to an alternative class definition consistent with the findings and conclusions set forth in this order. Either party may notice a motion for modification of the class definition consistent with the findings and conclusions set forth in this order. Any stipulation or motion for modification of the class shall be filed and served not later than thirty (30) days from the date of service of this order. IT IS SO ORDERED.

Dated: May 15, 2009          /s/ Anthony W. Ishii
                                            CHIEF UNITED STATES DISTRICT JUDGE